[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-12901

Non-Argument Calendar

_____

In re: 160 ROYAL PALM, LLC,

                                                        Debtor.

_____

_____

160 ROYAL PALM, LLC,

                                                        Plaintiff-Appellant,

*versus*

GLENN STRAUB,
PALM BEACH POLO, INC.,

                                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:21-cv-81217-AMC

_____

Before ROSENBAUM, JILL PRYOR, and GRANT, Circuit Judges.

PER CURIAM:

160 Royal Palm seeks to recoup $6.2 million the company transferred to Glenn Straub, claiming that it was a voidable fraudulent transfer. The bankruptcy court concluded that collateral estoppel barred this argument for part of the funds, and that, in any event, this claim failed because none of the funds were Royal Palm's property. Because we spot no legal mistakes or clear factual errors, we affirm.

## I.

In Palm Beach, Florida, stands an unfinished hotel known locally as the Palm House Hotel. This hotel has a "tortured history." *In re 160 Royal Palm, LLC*, No. 18-19441, 2019 WL 989829, at *1 (Bankr. S.D. Fla. Feb. 26, 2019), *subsequently aff'd sub nom. In re KK-PB Fin., LLC*, Nos. 20-12361, 20-12368, 2021 WL 5605085 (11th Cir. Nov. 30, 2021). At one point in that history, the hotel was owned by 160 Royal Palm, which was in turn owned by Glenn Straub. Eventually, Straub sold Royal Palm (and thus the hotel) to a man named Robert Matthews for $36 million. Under

the August 30, 2013 sale agreement, Matthews would pay Straub about $6.2 million in cash and Royal Palm would issue a note—a promise to pay the rest over time—to an entity controlled by Straub, secured by a mortgage on the hotel.  On September 11, 2013, Royal Palm wired Straub $6,211,000.00 and on October 2, 2013, it sent $8,718.32 to Palm Beach Polo, which was controlled by Straub.

About five years later, Royal Palm declared bankruptcy.  *See id.*  During this original bankruptcy proceeding, Straub's entity with the note and mortgage asked the court to recognize its claim to Royal Palm's assets, which it asserted was worth close to $40 million.  The court refused.  It held that Royal Palm had shown all the elements of fraudulent transfer under Florida Statutes § 726.106(1), so Straub's claim was worth $0.

In analyzing the transfer, the bankruptcy court had to examine Royal Palm's solvency around the time of Straub's sale.  Under § 726.106(1), a transfer is fraudulent only if "the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation."  So the court performed a "balance sheet test" in which it estimated Royal Palm's total assets and liabilities and compared the two.  To do this test, the court had to categorize assets and liabilities, including a $2.6 million transfer that passed through Royal Palm's bank account around the time of the sale.  The court found that these $2.6 million in funds were "not assets of the Debtor [Royal Palm] but were parked with the Debtor

for later payment to Mr. Straub as part of the equity sale transaction." *Id.* at *11.

In 2019, this adversarial action began: Royal Palm sued Straub in bankruptcy court to recover the $6.2 million paid to Straub back in 2013. The bankruptcy court ultimately dismissed the claim because Royal Palm could not show that it owned the transferred cash.

Three of its decisions are relevant to this appeal. *First*, the court said that Royal Palm was collaterally estopped from asserting that $2.6 million of the $6.2 million was its property given the court's findings in the original bankruptcy case. *Second*, the court decided, on summary judgment, that there was an issue of fact about whether Royal Palm owned the remaining $3.6 million. Even though it presumed that money in Royal Palm's account belonged to it, evidence about the method and amounts of the transfers countered this presumption.

*Third*, the bankruptcy court concluded—after a bench trial—that the $6.2 million did not belong to Royal Palm. "Based on the overwhelming evidence," it found that "all of the funds used to make the two wire transfers at issue in this case were merely parked in the debtor's bank account to facilitate payment to Mr. Straub." Indeed, Royal Palm "had no right to use them for a different purpose." "Those funds were not the debtor's property."

Royal Palm appealed to the district court, which affirmed, and then to this Court. It reiterates that the bankruptcy court made

two errors on summary judgment: applying collateral estoppel for $2.6 million and concluding that disputed facts prevented summary judgment for the remaining $3.6 million.  Royal Palm also challenges the bankruptcy court's finding—after a bench trial—that Royal Palm did not own any of the $6.2 million it transferred to Straub.

## II.

When a district court affirms a bankruptcy court order, we review the bankruptcy court's decision.  *L. Sols. of Chi. LLC v. Corbett*, 971 F.3d 1299, 1304 (11th Cir. 2020).  In so doing, we review the bankruptcy court's factual findings for clear error and its legal conclusions de novo.  *Id.*

## III.

## A.

Collateral estoppel bars a party from relitigating an issue already decided in a prior suit.  *I.A. Durbin, Inc. v. Jefferson Nat. Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986).  As the bankruptcy court correctly recited, the doctrine applies when the issue in the older proceeding was (1) identical; (2) actually litigated; (3) a "critical and necessary part" of the prior judgment; and (4) the party potentially precluded had a full and fair opportunity to litigate that issue.  *Christo v. Padgett*, 223 F.3d 1324, 1339 (11th Cir. 2000) (quotation omitted).  Applying this test, the court concluded that its finding in the original bankruptcy proceeding—that the $2.6 million in cash

6                    Opinion of the Court                    22-12901

was not one of Royal Palm's assets—precluded Royal Palm from claiming the funds as property in this adversarial bankruptcy suit.

Royal Palm maintains that the court erred in deciding that the issue was both "identical" and "critical and necessary." Both are "factual determinations underlying" the court's collateral estoppel analysis, so we will not disturb them unless clearly erroneous. *Richardson v. Ala. State Bd. of Educ.*, 935 F.2d 1240, 1244 (11th Cir. 1991); *see Islam v. Sec'y, Dep't of Homeland Sec.*, 997 F.3d 1333, 1340–41 (11th Cir. 2021) (reviewing whether something was "actually litigated" for clear error). This is a deferential standard; we only reverse if we have "a definite and firm conviction that a mistake has been committed." *United States v. Rodriguez*, 34 F.4th 961, 969 (11th Cir. 2022) (quotation omitted), *cert. denied,* 143 S. Ct. 580 (2023).

We see no clear error. In assessing "identical," the court reasoned that its earlier conclusion that the $2.6 million was not Royal Palm's asset also meant it was not its property. That makes sense: the cash had value, and if it could not count as some sort of asset, then Royal Palm had no ownership interest. The relevant Florida Statutes confirm this commonsense conclusion, defining "asset" as "property of a debtor." Fla. Stat. § 726.102(2).

Royal Palm primarily argues that the issues were not "identical" because the burden of persuasion differed between the proceedings. It is true that issues are not identical if distinct legal standards apply, or evidentiary burdens differ in legally significant fashion. *See B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S.

138, 154 (2015); *One Lot Emerald Cut Stones & One Ring v. United States*, 409 U.S. 232, 235 (1972). Royal Palm asserts that the court in this proceeding had to apply a legal presumption that Royal Palm owned the funds. True enough, "funds in a debtor's account are generally presumed to be the debtor's property." *In re Int'l Pharmacy & Disc. II, Inc.*, 443 F.3d 767, 771 (11th Cir. 2005). But Royal Palm never claims that this presumption did not also apply in the *original* bankruptcy estimation proceeding. Given the broad framing of our caselaw, we do not see why the presumption would be limited to formally adversarial proceedings. We cannot say the court erred in finding the issues "identical."

Nor did it clearly err in concluding that the issue was "critical and necessary" to the earlier proceeding. The bankruptcy court reasoned—and the parties seem to agree—that an issue is critical and necessary if it "was actually recognized by the parties as important and by the trier as necessary to the first judgment." *See* Restatement (Second) of Judgments § 27 cmt. j (1982). The court found that the parties and trier of fact (itself) did consider it important whether the $2.6 million was Royal Palm's asset.

Under that framing of "critical and necessary," we see no clear error. In the original proceeding, Royal Palm successfully reduced Straub's note-based claim to $0 based on fraudulent transfer. Under the relevant statute, Royal Palm had to show that it was "insolvent at that time" or "became insolvent as a result" of the transfer. Fla. Stat. § 726.106. And a debtor is insolvent "if the sum of the debtor's debts is greater than all of the debtor's assets at

a fair valuation." *Id.* § 726.103(1). As a result, the court had to estimate Royal Palm's assets to produce its judgment—a judgment favorable to Royal Palm.

Royal Palm argues that the issue was unnecessary because the $2.6 million would not have tipped the balance to solvency. True enough, removing the cash as an asset did not change the ultimate insolvency result. Still, computing assets and liabilities is indisputably necessary to the *process* described in Florida Statutes § 726.103. This statute requires courts to evaluate "all of the debtor's assets" in assessing insolvency. In doing an insolvency analysis requiring numeric totals, it does not make sense to judge the importance of each number in isolation. After all, the trier of fact—the court—raised the $2.6 million because Royal Palm's own expert had included it as an asset, suggesting that Royal Palm considered it important. *See In re 160 Royal Palm, LLC*, 2019 WL 989829, at *10–11. Based on the record, we do not have a "definite and firm conviction" that the court erred in deciding that this issue was critical and necessary.

### B.

We now turn to the bankruptcy court's conclusions about whether the funds were Royal Palm's property.

Although Royal Palm urges us to review the court's denial of summary judgment—and the district court improperly did so— we "will not review the pretrial denial of a motion for summary judgment after a full trial and judgment on the merits." *Lind v.*

*United Parcel Serv., Inc.*, 254 F.3d 1281, 1286 (11th Cir. 2001). Here the court entered a "Final Judgment" dismissing Royal Palm's complaint after a bench trial, so we will not reconsider its summary judgment denial.

After the trial, the court decided based on "the overwhelming evidence" that none of the $6.2 million belonged to Royal Palm.[1] Whether a "transfer involves the property of the Debtor is a finding of fact that is subject to review only for clear error." *In re Int'l Pharmacy & Disc. II, Inc.*, 443 F.3d at 771.

We see no clear error. Despite the presumption that the funds belonged to Royal Palm, the court heard facts at trial that called into question whether it had "sufficient control over the funds to warrant a finding that the funds were the debtor corporation's property." *In re Chase & Sanborn Corp.*, 813 F.2d 1177, 1180 (11th Cir. 1987). Most importantly, as the court noted, the total amount of the funds transferred to Royal Palm and on to Straub "was exactly the sum owing to Mr. Straub when he sold his equity interest in the debtor."

Royal Palm's forensic accounting expert, Marcie D. Bour, testified at trial that she traced the $6.2 million in cash transfers. Four transfers arrived in Royal Palm's bank account from lawyer

---

[1] The court explicitly stated that its factual finding "includes the 2.6 million dollars the Court addressed at summary judgment." So even if the bankruptcy court had erred in invoking collateral estoppel, the result for Royal Palm almost certainly would have been the same.

trust accounts: $2,600,000, $2,580,000, $150,920.08, and $890,000.78. Together, that is $6,220,920.86. Soon after, Royal Palm wired $6,211,000 to Straub and $8,718.32 to Palm Beach Polo, totaling $6,219,718.32. Based on the transfers' path, timing, and total compared to the cash purchase price, we cannot conclude that the court clearly erred.

Royal Palm repeatedly argues that neither Straub nor the bankruptcy court showed who owned the funds, so they must have belonged to it. This argument fails on two fronts. First, Straub did not necessarily need to prove who owned the funds to rebut the presumption that Royal Palm owned them. Put another way, the question was not *who* owned the funds, but *whether* Royal Palm in fact did. Regardless, Straub explicitly argues that he controlled and therefore owned the funds—not Royal Palm. Likewise, the court found that Royal Palm transferred the cash to "facilitate payment to Mr. Straub" and that Royal Palm "had no right to use them for a different purpose," suggesting that he owned the funds.

⋆    ⋆    ⋆

We **AFFIRM**.